UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------

x

JAMES STUTTS, et al.,

                    Plaintiffs,

     -against-

THE DE DIETRICH GROUP, et al.,

                    Defendants.

---------------------------------------------------

x

<u>MEMORANDUM AND ORDER</u>

03-CV-4058 (ILG)

Glasser, J., United States District Judge:

       This case involves the supply of chemical weapons and manufacturing equipment to Iraq during the Gulf War in 1991.  Plaintiffs, Gulf War Veterans and others similarly situated, allege that they were injured by exposure to chemical weapons that defendants manufactured or assisted in providing to Iraq.  Pending before the Court are the motions of defendants Buchi Labortechnik AG ("Buchi AG") and De Dietrich Process Systems, S.A. ("DDPS-SA") to dismiss the complaint based on lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).  Additionally, plaintiffs have moved for an order granting them jurisdictional discovery and leave to amend the complaint pursuant to Fed. R. Civ. P. 15(a).  The Court will consider each motion in turn.

## <u>FACTS</u>

       Because a motion to dismiss for lack of personal jurisdiction is "inherently a matter requiring the resolution of factual issues outside of the pleadings," material

1

submitted by the parties can be considered and the Court draws the following facts from those documents.  <u>See</u> <u>Pilates, Inc. v. Pilates Inst., Inc.</u>, 891 F. Supp. 175, 178 n.2 (S.D.N.Y. 1995).  In the complaint,[1] plaintiffs allege that they were injured when Iraqi ammunition dumps were blown up by United States military forces, releasing toxic chemical agents into areas where the plaintiffs were stationed.  Compl. ¶ 5.  Plaintiffs assert claims against two classes of defendants.  The "Supplier Defendants" allegedly sold chemical weapons and manufacturing equipment to Saddam Hussein's regime in Iraq with the knowledge that Hussein was using the chemical weapons "against his own people and citizens of neighboring states."  Compl. ¶ 3.  The "Bank Defendants" allegedly aided and abetted Saddam Hussein and the Supplier Defendants by providing letters of credit to the Hussein regime in favor of the Supplier Defendants with knowledge of the parties and goods involved in the sales transactions for which they issued the letters of credit.  Compl. ¶ 4.  Both Buchi AG and DDPS-SA are classified in the complaint as "Supplier Defendants."

## <u>DISCUSSION</u>

### I.    <u>Personal Jurisdiction Standard</u>

A plaintiff bears the burden of establishing jurisdiction over a defendant on a motion to dismiss a complaint under Rule 12(b)(2) of the Federal Rules of Civil Procedure.  <u>See</u> <u>Metro. Life Ins. Co. v. Robertson-Ceco Corp.</u>, 84 F.3d 560, 566 (2d Cir. 1996).  Although the plaintiff must ultimately establish jurisdiction over the defendant by a preponderance of the evidence, until an evidentiary hearing is held the plaintiff need only make a <u>prima</u> <u>facie</u> showing of jurisdiction.  <u>See</u> <u>Ball v. Metallurgie Hoboken-</u>

---

[1]  References herein to the "complaint" are to the Second Amended Class Action Complaint.

Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990); Hoffritz for Cutlery v. Amajac, Ltc., 763 F.2d 55, 57 (2d Cir. 1985). A plaintiff may rely on the pleadings and affidavits to meet its burden. See In re Tamoxifen Citrate Antitrust Litig., 262 F. Supp. 2d 17, 21 (E.D.N.Y. 2003) (Glasser, J.) (citing Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981)). As in this case, where an evidentiary hearing has not been held, a district court must view the pleadings in the light most favorable to the plaintiff. See id.

## II.    Buchi AG's Motion to Dismiss

Defendant Buchi AG is engaged in "the business of manufacturing laboratory tools for the pharmaceutical and food industries." Buchi AG Mem. at 1. It is incorporated under the laws of Switzerland and maintains its principal place of business in Flawil, Switzerland. See Declaration of Christian Radloff ("Radloff Decl.") ¶ 2. In moving to dismiss the complaint, Buchi AG contends that plaintiffs fail to allege sufficient facts to support this Court's jurisdiction over it. In particular, defendant avers that the complaint's lone allegation regarding Buchi AG's contacts with New York – that Buchi AG "is a Swiss company that does business in New York State" – is erroneous and insufficient to confer jurisdiction over it under New York law. Compl. ¶ 39; Buchi AG Mem. at 1. Defendant also opposes plaintiffs' request for leave to amend the complaint to include jurisdictional allegations about the New York contacts of Buchi AG's Delaware-based subsidiary, Buchi Analytical Inc. ("Buchi Analytical"). Defendant contends that Buchi Analytical is wholly independent from it and does not do business in New York. Buchi AG Mem. at 2. Buchi AG argues, therefore, that plaintiffs' proposed amended allegations are insufficient to confer jurisdiction over it. Buchi AG Mem. at 2. Finally, defendant argues that this Court should deny plaintiffs' request for

jurisdictional discovery because plaintiffs have failed to make out a <u>prima facie</u> case of jurisdiction over defendant.

## A. Buchi AG's "Presence" in New York

Plaintiffs assert that defendant is subject to jurisdiction under New York law. On a pending motion to dismiss for lack of personal jurisdiction, the district court must first determine whether it has jurisdiction under the laws of New York[2] and then whether the exercise of that jurisdiction would comport with constitutional due process. Plaintiffs contend that Buchi AG is subject to the general jurisdiction of this Court pursuant to N.Y. C.P.L.R. 301[3] because it was "doing business" in New York.[4] A foreign corporation – <u>i.e.</u>, one that is neither incorporated in New York nor licensed to do business in New York – is "doing business" in New York within the meaning of the statute "if it is engaged in such a continuous and systematic course of doing business here as to

---

[2] Plaintiffs assert that the Court has diversity jurisdiction over this action. Compl. ¶ 76. Additionally, plaintiffs asserts federal question subject matter jurisdiction based on customary international law, the Geneva Convention, and several U.N. Security Council Resolutions. <u>Id.</u> Personal jurisdiction in a diversity action is determined by the laws of the state in which the district court sits. <u>See</u> <u>U.S. v. First Nat'l City Bank</u>, 379 U.S. 378 (1965); <u>Arrowsmith v. United Press Int'l</u>, 320 F.2d 219, 230-31 (2d Cir. 1963). Moreover, that "same rule applies in federal question cases where no federal statute makes specific provision for national service of process." <u>Canterbury Belts Ltd. v. Lane Walker Rudkin, Ltd.</u>, 869 F.2d 34, 40 (2d Cir. 1989); <u>see also</u> <u>Pilates</u>, 891 F. Supp. 175, 179 (S.D.N.Y. 1995). Plaintiffs contend that 18 U.S.C. § 2334(a), under which some causes of action arise and which authorizes national service of process, warrants an analysis of Buchi AG's contacts with the United States as a whole under Rule 4(k)(2) jurisdiction. Pl. Opp. at 6. The Court discusses jurisdiction over defendant pursuant to Rule 4(k)(2) <u>infra</u>. Moreover, defendant Buchi AG was served via the Hague Convention. Pl. Opp. at 1. Accordingly, because service was not made pursuant to a federal statute authorizing national service of process in this case, and diversity jurisdiction is asserted, New York law applies.

[3] New York C.P.L.R. 301 provides: "a court may exercise jurisdiction over persons, property, or status as might have been exercised heretofore." That section incorporates case law preceding its enactment that conferred general jurisdiction over defendants who were "doing business" in New York. <u>See</u> <u>Hoffritz</u>, 763 F.2d at 57-58.

[4] Although Buchi AG discusses "specific jurisdiction" under C.P.L.R. 302, <u>see</u> Buchi AG Mem. at 4-6, nothing in plaintiffs' complaint or their opposition to defendant's motion to dismiss the complaint suggests that plaintiffs assert that basis for jurisdiction over Buchi AG. Accordingly, the Court restricts its analysis to whether it has general jurisdiction over Buchi AG.

warrant a finding of its presence in this jurisdiction."  Frummer v. Hilton Hotels Int'l,
Inc., 19 N.Y.2d 533, 536 (1967) (internal quotations omitted).  See also Hoffritz, 763
F.2d at 58 (a foreign corporation is "doing business" under N.Y. C.P.L.R. 301 "if it does
business in New York not occasionally or casually, but with a fair measure of
permanence and continuity").  Courts considering this issue analyze the following
factors:  whether the corporation has an office in New York; has employees in New York;
maintains a bank account or other property in the state; engages in public relations in
New York; and solicits business in the state.  See Frummer, 19 N.Y.2d at 537 (internal
quotations omitted).

Plaintiffs fail to allege sufficient facts suggesting that Buchi AG has any direct
contacts with New York.  Indeed, in the complaint, plaintiffs merely allege that it is a
"Swiss company doing business in New York."  Compl. ¶ 39.  These allegations fall far
short of establishing that Buchi AG is engaged in "a continuous and systematic course of
business" in New York.  See Frummer, 19 N.Y.2d at 537.  To the contrary, a sworn
affidavit from Christian Radloff, CEO of Buchi AG, makes clear that Buchi AG has no
direct contacts with New York.  Radloff declares that Buchi AG is organized under the
laws of Switzerland and maintains its principal place of business in Switzerland.  Radloff
Decl. ¶ 1.  Buchi AG does not conduct business in New York.  Id. ¶ 2.  Moreover, it does
not have:  an office, a plant or other center of business; a registered agent for service of
process; a bank account; a post office box; or a phone listing in New York.  Id. ¶ 3.  Nor
does Buchi AG maintain property in New York.  It has never paid New York state taxes
or franchise fees; has never commenced a law suit in New York; and does not have
persons or entities in New York that control its activities.  Id. ¶¶ 4-7.  Given that

plaintiffs allege no facts justifying even an inference that defendant is "present" in New York under C.P.L.R. 301 and Frummer, they fail to present a prima facie case of jurisdiction over Buchi AG in this Court.

## B.    The "Presence" of Defendant's Subsidiary

Plaintiffs further contend that the New York contacts of defendant's subsidiary, Buchi Analytical, are attributable to Buchi AG because the subsidiary is either an "agent" or a "mere department" of defendant.  Pl. Opp. at 7.  Thus, plaintiffs argue, Buchi AG can be deemed to be "doing business" in New York because of its subsidiary's presence in this state.[5]

In the complaint, plaintiffs make no factual allegations about Buchi Analytical. Indeed, they do not even mention Buchi Analytical.  Instead, plaintiffs seek leave to amend the complaint to add allegations regarding personal jurisdiction over Buchi Analytical.  Pursuant to Fed. R. Civ. P. 15(a), "A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served. . . . Otherwise a party may amend the party's pleading only by leave of court. . . . "  Plaintiffs must obtain leave of the court because they have already twice amended the complaint.

---

[5]  Plaintiffs also contend that Buchi AG is doing business in New York through Brinkmann Instruments Co., a distributor with an office in New York.  They assert that Buchi AG's website lists Brinkmann as its "partner."  See McCallion Decl. at 2 (Buchi AG does business in New York "through a U.S. partner, Brinkmann Instruments Co., located in this District at One Cantiague Road, Westbury, N.Y. 11590-0207"); Ex. G (attaching pages from Buchi AG's website).  Plaintiffs do not allege that Brinkmann is a subsidiary of defendant nor that it is defendant's partner in the legal sense of the term.  By contrast, defendant asserts that Brinkmann is merely a distributor of defendant's products and "there is no common ownership between the two companies."  Buchi AG Reply Mem. at 1.  Plaintiffs make no allegations that defendant in any way controlled Brinkmann and, in any event, New York courts have "never held a foreign corporation present on the basis of control, unless there was in existence at least a parent-subsidiary relationship."  Delagi v. Volkswagenwerk AG, 29 N.Y.2d 426, 432 (N.Y. 1972) (holding that foreign manufacturer was not "present" in New York for jurisdictional purposes based on in-state activities of the franchised wholesale distributor of defendant's products).  Thus, the website pages alone do not establish a relationship between Buchi AG and Brinkmann on the basis of which any New York contacts of Brinkmann could be attributed to Buchi AG.

In the declaration of Kenneth F. McCallion, Esq., which accompanies plaintiffs' opposition to defendant's motion, plaintiffs set forth additional allegations they seek to include in a proposed amended complaint. As discussed in greater detail below, it is clear that plaintiffs' additional allegations, taken together with the allegations of personal jurisdiction in the complaint, do not present a <u>prima</u> <u>facie</u> case of personal jurisdiction over defendant Buchi AG. Accordingly, the Court denies plaintiffs' motion to amend the complaint.

### 1. Subsidiary as Agent of Parent

"The presence of the subsidiary alone does not establish the parent's presence in the state." <u>Jazini v. Nissan Motor Co., Ltd.</u>, 148 F.3d 181, 184 (2d Cir. 1998). In order to make a <u>prima</u> <u>facie</u> case that a New York subsidiary is an "agent" of a foreign parent corporation, a plaintiff must allege that the subsidiary does all the business that the foreign parent could do were it in New York through its own officials. <u>See</u> <u>Frummer</u>, 19 N.Y.2d at 536-37. "Courts have interpreted this to mean that the agent's activities in New York must be 'sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services.'" <u>Schenker v. Assicurazioni Generali S.P.A. Consol.</u>, No. 98-cv-9186 (MBM), 2002 WL 1560788, at *6 (S.D.N.Y. July 15, 2002) (quoting <u>Gelfand v. Tanner Motor Tours, Ltd.</u>, 385 F.2d 116, 121 (2d Cir. 1967)).

Plaintiffs seek to amend their complaint to allege: "Upon information and belief, Buchi Analytical is doing in the U.S. all the business that Buchi AG could do if its own officials were present in the U.S." That is simply a legal conclusion couched as fact and thus must be rejected. <u>See</u> <u>Jazini</u>, 148 F.3d at 184 (rejecting allegation that merely

restates legal test for finding a subsidiary to be an agent of parent corporation). In addition, plaintiffs would amend their complaint to allege: "Buchi Analytical does not engage in any manufacturing and its entire line of products is manufactured by its parent corporation, Buchi AG"; "Buchi Analytical employs sales agents throughout the United States"; and "One Buchi Analytical sales agent is based in Denville, New Jersey, approximately fifty miles from this Court, and from that office handles Buchi sales in New York and the entire North East region." See McCallion Decl. at 2-3. In opposition to defendant's motion, plaintiffs also assert that Buchi Analytical "is doing little more than booking U.S. orders for delivery of the Buchi AG products." Pl. Opp. at 8. Allegations that Buchi Analytical sells (or books delivery orders for) Buchi AG's products in the United States are insufficient to show that Buchi Analytical is systematically and continuously "present" in New York for purposes of jurisdiction.[6] Indeed, the Jazini court rejected allegations similar to plaintiffs', stating that a foreign manufacturer is not "present" in New York "simply because it sells [products] through a New York distributor." 148 F.3d at 184.

Plaintiffs rely on materials beyond the pleadings to support their jurisdictional allegations. They refer to the websites of Buchi AG and Buchi Analytical, which show identical product lists. See Pl. Opp. at 4; see also McCallion Decl. Exs. E, D. Additionally, plaintiffs excerpt a page purported to be from the "Buchi website" that lists Buchi Analytical as a "USA Partner." These pages do not inform the Court about the relationship between the two entities and are insufficient to raise an inference of agency.

---

[6] In any event, plaintiffs cannot amend their complaint by asserting in their brief that Buchi Analytical does booking for Buchi AG. See Wright v. Ernst & Young LLP, 152 F.3d 169, 177 (2d Cir. 1998).

See Schenker, 2002 WL 1560788, at *7 (website of foreign parent corporation stating that defendant conducts business in U.S. and listing U.S. subsidiaries failed to show activities by subsidiary that would subject parent to jurisdiction).  Taken all together, the plaintiffs' proposed allegations and additional materials fall far short of those that the Frummer court deemed sufficient to establish agency, including factors such as that the affiliate corporation had an office, a bank account and a telephone number in New York, did public relations work in New York and, most significantly, provided all of the same services in New York that the defendant hotel would were its own officials doing business directly in New York.  19 N.Y.2d at 537.  Moreover, the cases plaintiffs cite are inapposite because the courts there required more substantial factual allegations in premising jurisdiction on agency than plaintiffs here provide.  See, e.g., Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 95-98 (2d Cir. 2000) (subsidiary was "agent" of foreign corporation where subsidiary devoted one hundred percent of time to defendants' business and defendants fully funded the subsidiary); Bulova Watch Co., Inc., v. K. Hattori & Co., Ltd., 508 F. Supp. 1322, 1344 (E.D.N.Y. 1981) (New York subsidiary was "agent" of foreign parent where it advertised and sold defendant's products, provided service quality control centers and developed marketing techniques to expand New York market for defendant's products).  Thus, plaintiffs' proposed allegations are insufficient to show that the subsidiary does all the business Buchi AG would do were it in New York.

### 2.	Subsidiary as "Mere Department" of Parent

In order to establish that a subsidiary is a "mere department" of its parent corporation, a plaintiff must factually allege that "the foreign parent's control of the

subsidiary is pervasive enough that the corporate separation is more formal than real."
Schenker, 2002 WL 1560788, at *7. When analyzing this issue, courts consider the
following factors: (1) common ownership between the parent and subsidiary, which is
essential to a "mere department" finding; (2) the "financial dependency of the subsidiary
on the parent corporation"; (3) "the degree to which the parent corporation interferes in
the selection and assignment of the subsidiary's executive personnel and fails to observe
corporate formalities"; and (4) "the degree of control over the marketing and
operational policies of the subsidiary exercised by the parent." Volkswagenwerk
Aktiengesellschaft v. Beech Aircraft Corp., 751 F.2d 117, 120-22 (2d Cir. 1984).

First, according to McCallion's declaration, Buchi Analytical is a "wholly owned
subsidiary" of Buchi AG. McCallion Decl. at 2. This is not controverted by Radloff's
declaration. That allegation satisfies the requirement of common ownership. See Beech
Aircraft, 751 F.2d at 120. With regard to the second requirement under Beech Aircraft,
examples of a subsidiary's financial dependency on a parent corporation include the
parent's provision of no-interest loans to the subsidiary, the parent's control of the
subsidiary's finances, and the parent's financing of inventory for the subsidiary. Jerge v.
Potter, 2000 WL 1160459, at *3 (W.D.N.Y. Aug. 11, 2000) (no evidence of financial
dependency where parent did not provide day-to-day or annual financing to subsidiary).
Plaintiffs in this case allege that "Buchi Analytical is financial [sic] dependent on Buchi
AG, as without the products of Buchi AG to sell and service, Buchi Analytical would have
no business or income." This provides no specific facts suggesting financial dependency.
Indeed, such a general allegation could be true about any two affiliated, but
independent, companies. Moreover, courts require more than merely that a subsidiary

derives income from its parent's business to show that the subsidiary is a mere department of the parent for jurisdictional purposes. See Taca Int'l Airlines v. Rolls-Royce, 15 N.Y.2d 97, 101-2 (1965) (finding subsidiary was mere department of parent where, in addition to fact that subsidiary derived income from sale of products parent manufactured, the two companies had common employees and management, the subsidiary's employees were trained by the parent, the parent wrote and published all sales literature for the subsidiary, and the income of the subsidiary appeared on the parent's financial sheets).

Beech Aircraft requires that a plaintiff sufficiently allege control by a parent of a subsidiary. In this case, plaintiffs fail to make any allegations – in the complaint or the proposed amendments – suggesting that Buchi AG is involved in selecting Buchi Analytical's executives, that the two ignore corporate formalities or that Buchi AG controls its subsidiary's marketing or operations. The proposed additional allegation that "Buchi AG supervises the activities of Buchi Analytical not as a stockholder watching over its investment but as the headquarters of a worldwide business making sure that its products and services meet uniform company standards" does not provide any facts to suggest that Buchi AG controls Buchi Analytical. In Jazini, the Second Circuit rejected similar assertions by plaintiffs as failing to establish that the subsidiary was a "mere department" of the foreign parent. 148 F.3d at 185 (statements by defendant's president that the "company 'need[s] to become a truly global company'" and "'I want each part of our global operations, and this includes Japan, to focus on contributing to the company as a whole'" did not establish a "mere department"); see also In re Ski Train Fire in Kaprun, Austria, 230 F. Supp. 2d 403, 411 (S.D.N.Y. 2002)

11

(fact that two companies held themselves out on website as cooperating entities insufficient to show subsidiary was "mere department" of parent); <u>Jerge</u>, 2000 WL 1160459, at *3 (fact that parent company in multi-national corporation provides "management support" for subsidiaries as indicated on company website is not sufficient evidence of control). Moreover, plaintiffs' reference to a portion of Buchi AG's website that lists Buchi Analytical as a "Partner[] for USA," <u>see</u> McCallion Decl. Ex. G, does not suffice to show Buchi AG's control over Buchi Analytical under this test. <u>See</u> <u>Jerge</u>, 2000 WL 1160459, at *3 (that subsidiary is listed as "one of the operating units or divisions of" parent company does not indicate control under "mere department" test). Thus, plaintiffs' proposed allegations are insufficient to establish a <u>prima</u> <u>facie</u> case of jurisdiction over the defendant based on an agency relationship with its subsidiary.

The insufficiency of plaintiffs' allegations is made more conspicuous by the sworn statement of Christian Radloff, which states that Buchi AG, a Swiss corporation, and Buchi Analytical, incorporated and located in Delaware, "are separate corporations that independently manage their own business affairs." Radloff Decl. ¶ 8. To that end, the management of Buchi AG is distinct from that of Buchi Analytical. The officers of Buchi Analytical, who are employees of that entity (and not Buchi AG), perform the daily operations of Buchi Analytical and are overseen by Buchi Analytical's board of directors. <u>Id.</u> ¶ 9. Moreover, Buchi Analytical neither acts as Buchi AG's agent for service of process in the United States, nor conducts business for Buchi AG as its agent in New York. <u>Id.</u> ¶ 10. Radloff declares that Buchi Analytical has a separate payroll for its employees, for whom it provides its own benefits plan and pension program. Finally, Buchi Analytical keeps its own books and records, files its own United States tax return

and otherwise "observes all corporate formalities." Id. ¶ 11.  In the face of these sworn statements, it is clear that plaintiffs' allegations are insufficient.  See Ski Train Fire, 230 F. Supp. 2d at 410 (crediting sworn declaration from foreign corporation's representative that it does no business in New York).

In sum, the plaintiffs' proposed amendments fail to allege either that Buchi Analytical is an "agent" or a "mere department" of defendant Buchi AG so that under New York law the contacts of Buchi Analytical are attributable to Buchi AG and sufficient to confer jurisdiction over defendant in this Court.[7]

### C.    Jurisdiction Pursuant to Rule 4(k)(2)

In their opposition brief, plaintiffs assert Fed. R. Civ. P. 4(k)(2) as an additional basis for jurisdiction over the defendant.  They contend that jurisdiction is proper under that provision because, "through its U.S. subsidiary, Buchi AG sells its products in New York and throughout the entire United States."  Pl. Opp. at 3.[8]  "Rule 4(k)(2) provides for jurisdiction over foreign defendants who, in a case arising under federal law, have insufficient contacts with any particular state, but have sufficient aggregate ties to the United States as a whole, to render jurisdiction constitutional."  Turbana Corp. v. M/V "Summer Meadows", No. 03-cv-2099 (HB), 2003 WL 22852742, at *5 (S.D.N.Y. Dec. 2, 2003).  Buchi AG contends that plaintiffs have failed to plead the requisite elements for

---

[7]  Because there is no basis for jurisdiction over defendant under New York law, the Court need not determine whether the exercise of jurisdiction would comport with due process.  See Ball, 902 F.2d at 198 (declining to consider due process concerns because district court properly held that plaintiffs failed to establish jurisdiction over defendant under New York C.P.L.R. 301 and 302); Schenker, 2002 WL 1560788, at *11.

[8]  Courts reject plaintiffs' attempts to confer general jurisdiction under New York law over foreign defendants based on United States contacts.  See Ski Train Fire, 230 F. Supp. 2d at 408 (rejecting plaintiffs' argument that Austrian defendant has various contacts with "the United States" under N.Y. C.P.L.R. 301 analysis).  Thus, this allegation does not support plaintiffs' argument under C.P.L.R. 301.

jurisdiction pursuant to Rule 4(k)(2).  Buchi AG Reply Mem. at 10-11 (citing <u>Nat'l</u> <u>Asbestos Workers' Med. Fund v. Philip Morris, Inc.</u>, 86 F. Supp. 2d 137 (E.D.N.Y. 2000) (requiring allegations that the claims in the complaint arise under federal law; jurisdiction is not available in any state; the exercise of jurisdiction comports with due process)).  Plaintiffs indeed fail to plead the requisite elements for Rule 4(k)(2) jurisdiction, in particular that jurisdiction is not available in any state, but that defendant has sufficient contacts with the United States through its subsidiary. Moreover, where a party's contacts with the United States hinge on an alleged identity between it and an affiliated corporation, courts require sufficient allegations of interdependence to find a <u>prima</u> <u>facie</u> case of jurisdiction under Rule 4(k)(2).  <u>See Jerge</u>, 2000 WL 1160459, at *5 (no basis for personal jurisdiction under Rule 4(k)(2) where defendant had insufficient minimum contacts with the United States and was independent from subsidiary, which itself had contacts within the United States).  As discussed above, plaintiffs fail to sufficiently allege facts demonstrating such an intimate relationship between Buchi AG and Buchi Analytical for jurisdictional purposes.  Thus, the Court rejects plaintiffs' argument that jurisdiction is proper under Rule 4(k)(2). Accordingly, because plaintiffs have failed to establish a basis for personal jurisdiction over Buchi AG, the Court grants Buchi AG's motion to dismiss.

## III.    **DDPS-SA's Motion to Dismiss**

DDPS-SA is a supplier of equipment, systems, solutions and services to the chemical and pharmaceutical industries.  DDPS-SA Mem. at 3.  Plaintiffs allege that DDPS-SA is "a French corporation doing business in this State both directly and/or through one or more wholly-owned subsidiaries that it dominates and controls,

including the QVF Group and QVF Process Systems, which has an office in Horseheads, New York." Compl. ¶ 29. According to the declaration of Regis Bello, the Chairman of DDPS-SA's Board of Directors, that company "is a French corporation organized and existing under the laws of the Republic of France, with its principal place of business in Zinswiller, France." Bello Declaration ("Bello Decl.") ¶ 5. In moving to dismiss for lack of jurisdiction, DDPS-SA argues that it has no contacts with New York either directly or indirectly through its U.S. subsidiaries, and that, therefore, this Court has no jurisdiction over it. DDPS-SA Mem. at 3. Plaintiffs move to amend their complaint to assert the additional jurisdictional allegations in Bello's declaration. As discussed in greater detail below, and as with Buchi AG, plaintiffs' proposed additional allegations, taken together with the allegations of personal jurisdiction in the complaint, do not establish a prima facie case of personal jurisdiction over DDPS-SA and, therefore, the motion to amend the complaint is denied.

Plaintiffs argue that this Court has general jurisdiction over DDPS-SA pursuant to N.Y. C.P.L.R. 301.[9] Specifically, plaintiffs contend that the contacts of DDPS-SA's subsidiaries are attributable to DDPS-SA for purposes of jurisdiction because those subsidiaries are its "mere departments" or "agents." See Pl. Opp. at 6. As an initial matter, defendant contends that De Dietrich Process Systems, Inc. ("DDPS-INC") is its only subsidiary that is located in and which conducts operations in the United States.

---

[9] In their opposition brief, plaintiffs do not argue that DDPS-SA itself is "doing business" in New York. Plaintiffs make the conclusory assertion that "the Court appears to have specific personal jurisdiction concerning De Dietrich" based on its facility in Corpus Christi, Texas, which "was in a position to" supply equipment sold to Saddam Hussein. See Pl. Opp. at 4. Aside from lacking factual specificity, this allegation is not included either in the complaint or the proposed additional allegations, and therefore, the Court declines to consider it.

DDPS-SA Mem. at 4.[10]  DDPS-INC is a Delaware corporation with its principal place of business in Union, New Jersey.  DDPS-SA argues that it is completely separate from DDPS-INC.  By contrast, in their memorandum of law plaintiffs contend, without elaboration, that DDPS-INC is an agent of DDPS-SA.  Both the complaint and plaintiffs' proposed additional allegations fail to allege that the subsidiary does all the business that the foreign parent could do were it in New York through its own officials.  See Frummer, 19 N.Y.2d at 536-37.  Thus, personal jurisdiction cannot be premised on an agency theory of attribution.  Plaintiffs also assert, again without elaboration, that DDPS-INC is a "mere department" of DDPS-SA.  See Pl. Opp. at 6.  Yet plaintiffs' allegations fail to demonstrate the requisite control by the parent of the subsidiary for jurisdiction to exist under this theory.  While both parties agree that DDPS-INC is a wholly-owned subsidiary of DDPS-SA, thus demonstrating common ownership, plaintiffs fail to refute the sworn affidavit of Bello which indicates that other aspects of control are absent.  For example, DDPS-INC is not DDPS-SA's agent for service of

---

[10] In the complaint, plaintiffs identify the QVF Group and QVF Process Systems as DDPS-SA's subsidiaries for purposes of jurisdiction.  According to the sworn testimony of Bello, in March 2000, DDPS-SA acquired QVF Engineering GMBH, a German corporation with its principal place of business in Mainz, Germany, and all of its subsidiaries, including QVF Process Systems, Inc. ("QVF-INC").  Bello Decl. ¶¶ 32, 33.  In December 2001, QVF-INC was consolidated and merged with two other DDPS-SA subsidiaries to form DDPS-INC.  Consequently, QVF-INC no longer exists.  Id. ¶¶ 36, 37.  DDPA-SA never conducted its business through QVF-INC, which had its own officers, directors, facilities and employees and independently managed its daily operations.  Bello Decl. ¶¶ 38-40.  In March 2002, DDPS-INC closed the former QVF-INC office located in Horseheads, New York.  Plaintiffs dispute the truthfulness of Bello's declaration that "the only subsidiary of DDPS-SA that is located and conducts operations in the United States is" DDPS-INC, see Pl. Opp. at 3, and submit web pages describing facilities of "De Dietrich USA" in New Jersey and Texas.  See McCallion Decl. Ex. G.  Additionally, plaintiffs submit pages from the Texas Secretary of State website indicating that De Dietrich (USA), Inc. has an office in Texas, but that there are no records for De Dietrich Process Systems, Inc.  See id. Ex. F.  According to Bello's sworn supplemental declaration, De Dietrich USA is one of the entities that merged with QVF-INC in December 2001 and its facilities now operate under the name DDPS-INC.  See Bello Supp. Decl. ¶¶ 7-8.  Thus, the Court rejects plaintiffs' assertion that Bello's affidavit is untruthful.

process in New York or the United States. Bello Decl. ¶ 25. Moreover, DDPS-INC is financially independent of DDPS-SA. Id. ¶¶ 29-30. As with Buchi AG, plaintiffs' conclusory proposed allegation that the subsidiaries are "financially dependant upon [DDPS-SA] for their marketing to the business world, without which they would have no business or income," McCallion Decl. at 2, provides no facts supporting a conclusion of financial dependency. As the Second Circuit states in Jazini, with regard to a similar allegation, "we are not bound to accept as true a legal conclusion couched as a factual allegation." 148 F.3d at 185 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)). DDPS-INC has its own separate facilities, officers and employees and the two entities have separate boards of directors. Bello Decl. ¶¶ 27-28. While the companies' boards share two common directors, some overlap of directors and officers does not establish that a subsidiary corporation is a mere department of its parent. See Jazini, 148 F.3d at 185. Plaintiffs' proposed additional allegation that DDPS-SA "directs the selection and assignment of its subsidiaries' executive personnel, and exercises control over the marketing and operational policies of its subsidiaries," McCallion Decl. at 2-3, is conclusory and fails to provide any specific jurisdictional facts. Plaintiffs fail to allege facts that refute Bello's testimony that "DDPS-SA and DDPS-INC maintain, and always have maintained, separate corporate identities." Bello Decl. ¶ 31. Finally, the Court rejects the proposed additional allegation that DDPS-SA "supervises the activities of its United States subsidiaries not as a stockholder watching over its investment but as the headquarters of a world wide business making sure that its products and services meet uniform company standards" for the same reason it rejected plaintiffs' identical proposed allegation regarding Buchi AG. See discussion supra.

17

In addition, in order to demonstrate that DDPS-SA and its facilities are a "concerted entity," see Pl. Opp. at 3, plaintiffs submit pages from an on-line phone book indicating that an entity named "De Dietrich USA Inc." has an address in Corpus Christi, TX. See McCallion Decl. Ex. E. Plaintiffs also submit pages from the websites of De Dietrich USA, DDPS-INC, and "De Dietrich." Id. Ex. G. These submissions fail to provide any information about the extent, if any, of DDPS-SA's control over the other entities, the crucial inquiry under the "mere department" test. See J.L.B. Equities, Inc. v. Ocwen Financial Corp., 131 F. Supp. 2d 544, 550 (S.D.N.Y. 2001) (declining to find that a web page, which, according to plaintiff, treats the parent and subsidiary "as one," "is sufficient to show that the parent controls the subsidiary's marketing and operational policies. An advertising strategy deciding not to present to its consumers the existence of a parent-subsidiary relationship is not equivalent to a showing that the parent corporation exercises any control over its subsidiary's operational or marketing activities."); Jerge, 2000 WL 1160459, at *3 (that subsidiary is listed as "one of the operating units or divisions of" parent company does not indicate control under "mere department" test). See DDPS-SA Reply Mem. at 7. Accordingly, plaintiffs fail to establish that DDPS-INC is a "mere department" of DDPS-SA so as to justify the Court's exercise of jurisdiction over defendant.

In their opposition brief and their proposed amendments, plaintiffs also assert personal jurisdiction over DDPS-SA pursuant to Fed. R. Civ. P. 4(k)(2), which applies to "foreign defendants who, in a case arising under federal law, have insufficient contacts with any particular state, but have sufficient aggregate ties to the United States as a whole, to render jurisdiction constitutional." Turbana Corp., 2003 WL 22852742, at *5.

See Pl. Opp. at 5-6.  Plaintiffs fail to plead facts demonstrating that DDPS-SA has insufficient contacts with any particular state, but sufficient aggregate contacts with the United States.  They argue that DDPS-SA "has extensive contacts with the United States as a result of its wholly owned subsidiary facilities in Texas, North Carolina, and New Jersey, which are mere departments or agents of" DDPS-SA.  Pl. Opp. at 6.  Yet, as discussed above, plaintiffs fail to sufficiently allege an identity between DDPS-SA and DDPS-INC so as to justify the exercise of jurisdiction over DDPS-SA based on DDPS-INC's activities.  Accordingly, plaintiffs fail to satisfy the requirements of Rule 4(k)(2) jurisdiction.  Because plaintiffs fail to sufficiently allege that DDPS-SA is "doing business" through its U.S. subsidiary or that it has sufficient aggregate contacts with the U.S. to establish jurisdiction under Rule 4(k)(2), the Court grants defendant's motion to dismiss for lack of personal jurisdiction.[11]

## IV.  Request for Jurisdictional Discovery

The Court turns next to plaintiffs' request for jurisdictional discovery.  A district court has "considerable procedural leeway" when deciding a motion to dismiss for lack of personal jurisdiction and "may permit discovery in aid of the motion."  Marine Midland, 664 F.2d at 904.  While "generally a plaintiff may be allowed limited discovery with respect to the jurisdictional issue," Filus v. Lot Polish Airlines, 907 F.2d 1328, 1332 (2d Cir. 1990), the Second Circuit's more recent decision in Jazini v. Nissan Motor Co., 148 F.3d 191 (2d Cir. 1998), expressly imposes a limitation on when a plaintiff is entitled to such discovery.  In that case, plaintiffs, a married couple living in New York, sued a

---

[11]  Because the Court finds no statutory basis for personal jurisdiction, it need not decide whether the exercise of jurisdiction would comport with due process.

Japanese company in the Southern District of New York for injuries that allegedly occurred in Iran when plaintiffs' car, which was manufactured by defendant, malfunctioned.  Id. at 183.  The plaintiffs asserted personal jurisdiction over the defendant based on the presence of defendant's subsidiary in New York.  Id.  The district court dismissed the case for lack of personal jurisdiction and on appeal, the question presented was whether, based on the complaint and additional submissions, plaintiffs were entitled to jurisdictional discovery.  The Second Circuit held that because plaintiffs did not establish a prima facie case of personal jurisdiction over the foreign parent corporation, they were not entitled to jurisdictional discovery.  Id. at 185-86.  District courts in this circuit routinely reject requests for jurisdictional discovery where a plaintiff's allegations are insufficient to make out a prima facie case of jurisdiction.  See Ski Train Fire, 230 F. Supp. 2d at 412; Dale v. Banque SCS Alliance S.A., No. 02-cv-3592 (RCC), 2004 WL 2389894, at *7 (S.D.N.Y. Oct. 22, 2004); Giar v. Centea, No. 02-cv-7916 (LLS), 2003 WL 1900836, at *2 (S.D.N.Y. April 16, 2003); see also Grove Valve & Regulator Co., Inc. v. Iranian Oil Servs. Ltd., 87 F.R.D. 93, 96 n.8 (S.D.N.Y. 1980) (denying request for jurisdictional discovery where "plaintiff has made no threshold showing that discovery might uncover a basis for jurisdiction").

Where, as here, there are insufficient allegations that a subsidiary is so identified with its parent corporation that the latter is properly subject to jurisdiction based on the subsidiary's contacts in New York, a plaintiff has failed to establish a prima facie case of jurisdiction over the parent corporation.  Jazini compels the conclusion that plaintiffs, having failed to make out a prima facie case of jurisdiction over defendants, are not entitled to jurisdictional discovery.  The Court "recognize[s] that without discovery it

20

may be extremely difficult for plaintiffs . . . to make a <u>prima</u> <u>facie</u> showing of jurisdiction over a foreign corporation that they seek to sue in the federal courts in New York.  That, however, is the consequence of the problems inherent in attempting to sue a foreign corporation that has carefully structured its business so as to separate itself from the operation of its wholly-owned subsidiaries in the United States – as it properly may do." <u>Jazini</u>, 148 F.3d at 186.[12]

## <u>CONCLUSION</u>

For the foregoing reasons, defendants' motions to dismiss the complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) are granted and plaintiffs' cross-motion for jurisdictional discovery and to amend the complaint pursuant to Fed. R. Civ. P. 15(a) is denied.

SO ORDERED.


Dated: November 21, 2006
        Brooklyn, New York


_____/s/_____
I. Leo Glasser
United States District Judge


---

[12]  Because the Court rejects plaintiffs' request for jurisdictional discovery, it does not reach Buchi AG's argument that discovery, if any, should be conducted under the Hague Convention.  <u>See</u> Buchi AG Reply Mem. at 11-14.